## WILL WHITSTONE v. THE STATE.

### No. 1468.  Decided December 20, 1911.

**Local Option—Purchaser—Variance.**

Where, upon trial of violation of the local option law, the evidence did not show a sale to the alleged purchaser, but if there was any sale at all, it was made to another person, the conviction could not be sustained.  Following Miles v. State, 62 Texas Crim. Rep., 530, and other cases.

Appeal from the County Court of Nacogdoches.  Tried below before the Hon. F. P. Marshall.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $40 and sixty days' confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is a local option case.  The sale is alleged to have been made to Ned Pye.

The facts show, for the State, through the witness, Burns, that on the 3d of December, 1910, he was in the little town of Sacul.  Ned Pye told the witness he wanted a quart of whisky; witness told him he thought he could get it for him, and further told him that appellant had some whisky; Pye gave the witness a dollar in silver consisting of two half dollar pieces.  He saw appellant down near the depot with a package of eight quarts of whisky that he had just gotten out of the express office.  The witness said he told appellant that Ned Pye wanted a quart of whisky and appellant replied, "I am doing business." Burns, the witness, then went to Pye and got the two half dollars; that Pye got part of the money from Lawson Blackburn; that after appellant and the witness had left the depot and gone a short distance, appellant stopped and put his package down; witness told him it was too public a place to open the whisky.  He picked it up and went out to the outer part of town and into the woods.  The whisky was in a box; the box was opened and the appellant began putting the whisky out of the box into a sack; that he set one bottle out on the ground near the box.  The witness says, he put the money in the box; that when he had put the rest of the whisky in the sack, Ned Pye, Lonnie Blackburn and Irwin Corley walked up and Pye said, "Look, what I have found," picked up the bottle of whisky and walked off with it; that just as this happened the constable, Wallace, walked up from the opposite side with a pistol in his hand; defendant picked up his sack and started off; that Wallace stopped him and took him to town; that when Wallace came up, witness left and went home.  He says he did not get the money out of the box and did not see anyone else get it; did

not know whether defendant saw him put the money in the box or not. This witness had taken twelve quarts of whisky out of the depot this same day and was drinking some and, as he expressed it, was feeling good. He did not tell Pye to come up and get the whisky; he just told Pye he would try to get some whisky for him; that he did not know where he was and did not see him until he walked up and picked up the whisky and went away with it. He says he did not give the defendant the money; that he put it in the box.

The constable testified that he saw Pye walk up and get a quart of whisky and walk off with it, but saw no money pass. That he stopped the defendant and arrested him; that he found he had two whole silver dollars, and no half dollar pieces; that he subsequently went back and got the box; that there was no money in it. The witness says he did not search the witness, Jeff Burns, and did not see him any more that day. That after the defendant made bond, he turned the remaining seven quarts of whisky over to him that he had taken from him.

Anderson testified that he was present when Burns and defendant left the depot with some whisky; that defendant invited himself and Burns to go with him and take a drink. He says: "We had given him whisky at other times before this when we had whisky and he asked us to drink with him. When we had gone a short distance from the depot the defendant stopped and started to open the package on the public square. Jeff Burns told him not to open it there; it was too public a place. So we went out into the edge of town into the woods. The defendant set the box down and began taking the whisky out. He put it all in a sack but one quart bottle, which he set out on the ground. At that time, Ned Pye came along and picked it up, saying: 'Look here, what I have found.' Just as this happened, Mr. Wallace came up and arrested Will Whitstone and took him to town." This witness did not hear Burns say anything to the defendant about getting a quart of whisky for Ned Pye; that they were together from the time they got together at the depot, after defendant got the whisky until Wallace arrested the defendant; that he did not hear Burns say anything to defendant about getting a quart of whisky for Ned Pye; did not hear Burns say anything about money, and did not see him put anything in the box; that he had gone down there to get a drink of defendant's whisky.

The defendant himself testified that he and another man named Foreman had ordered eight quarts of whisky; that each one of them was to have four quarts and it was addressed to both of them; that he took the whisky out of the express office and after taking it out, he invited the witness, Anderson, and the witness, Burns, to go with him and get a drink; that they left the depot going across the side of the square in the direction of a lumber shed; that when they had gone about fifty yards he stopped and started to open the package; this was in the day time and in plain view of the depot and the business houses of the little town of Sacul; that the witness, Burns, said, "Let's not

stop here, it is too public a place;" that he picked up an old sack that had been thrown down near the lumber shed and picked up his package, and they went on; that they stopped near some trees about 150 yards from town; that Burns and Anderson were with him, appellant; that he opened the box of whisky and put all of it into the sack except one bottle, which he set out for the purpose of taking a drink and treating his friends. That at this juncture, Ned Pye walked up and took this bottle of whisky, and said, "Look here, what I have found," and walked off with the whisky just as Mr. Wallace came up and threw a pistol on him, appellant, and arrested him. That Wallace took appellant to town and chained him to a tree; appellant never went back to get the box. He states that Burns did not give him any money nor say anything about paying him for the whisky. That he did not see Burns put any money in the box; that he was present all the time; that he was taking the whisky out of the box and putting it into the sack, and could have seen Burns if he had put any money in the box; that the box, sack and Jeff Burns were all right in front of him and all right at him. That Mr. Wallace searched him and found two whole silver dollars in his pocket; that he had borrowed this money from Albert Dixon that day; that he did not have any half dollar pieces; that he did not let Jeff Burns have any whisky for himself or anybody else; that he said nothing about buying the whisky for Ned Pye or anybody else and did not pay him any money or promise to pay him any money. This is the substance of the evidence.

We have stated the case more fully perhaps than was necessary on the facts. The evidence does not, in our judgment, show a sale to the alleged purchaser, Pye, but if there was any sale at all, it was made to Burns and not to Pye. Appellant was not charged with selling intoxicating liquor to Burns. Burns was the agent and friend of Pye, seeking to obtain whisky from some one for Pye, and wanted appellant to obtain it. This evidence, in our judgment, fails to show that a sale was consummated even to Burns, but if there could be any sale at all it was to Burns and not Pye. The State relied upon the evidence of Burns to make out its case, and his testimony in connection with the testimony of the other witnesses is entirely too uncertain and flimsy in its character to authorize a conviction, and does not carry that cogency which is necessary to show that appellant made the sale to Burns or to anyone; but under any conclusion to be reached under the facts of this case, if the sale was made at all, it was only made to Burns and not to Pye. Under a number of decisions of this court this would not constitute a sale to Pye, but if the same was made at all it was made to Burns. Miles v. State, 62 Texas Crim. Rep., 530, 138 S. W. Rep., 398; Bruce v. State, 39 Texas Crim. Rep., 26; Smart v. State, 49 Texas Crim. Rep., 373; Vincent v. State, 55 S. W. Rep., 819; McLeod v. State, 44 S. W. Rep., 1090; Oxford v. State, 49 Texas Crim. Rep., 321, 97 S. W. Rep., 484; Whittlesey v. State, 60 Texas

Crim. Rep., 291, 131 S. W. Rep., 1093; Kennard v. State, decided at the present term of the court.

There are other matters in the case, but this matter disposes of the case sufficiently, and it is ordered that the judgment be reversed and the cause remanded.

*Reversed and remanded.*