**UNITED STATES of America,**

v.

**Benjamin RAYSOR, and Hugh Gene Mosley, Appellants,**

**Benjamin Raysor, Appellant in No. 13486, Hugh Gene Mosley, Appellant in No. 13487.**

**Nos. 13486, 13487.**

United States Court of Appeals Third Circuit.

Argued April 21, 1961.

Decided Aug. 17, 1961.

Hymen Schlesinger, Pittsburgh, Pa., for appellants.

Hubert I. Teitelbaum, U. S. Atty., Pittsburgh, Pa. (Daniel J. Snyder, Asst. U. S. Atty., Western Dist. of Pennsylvania, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

Following a jury trial defendants Benjamin Raysor and Hugh Gene Mosley were found guilty and sentenced for violations of the narcotics law.[1]

In their respective appeals both defendants contend that there was a fatal variance between the indictment and proof in that the indictment charged them with selling narcotics to "George T. Dillworth, Narcotic Agent" while the evidence adduced at the trial established the sales were made to "Thomas Charity"; Raysor also raises the point that his "possession" of the narcotics sold was not established by "direct evidence"

The joint indictment, in two counts, on which defendants came to trial, charged that the defendants "did fraudulently and knowingly sell and facilitate the concealment and sale" of quantities of heroin on December 18, 1959 and December 21, 1959 to "George T. Dillworth, Narcotic Agent."

Viewing the evidence in the light most favorable to the Government, as the jury's verdict required, the critical facts may be stated as follows:

On the score of the first count of the indictment:

During December of 1959, one Thomas Charity, a known narcotics addict, was employed by the federal narcotics office in Pittsburgh, Pennsylvania, and was paid on a daily basis. On December 18, 1959, in pursuance of an investigation in the Pittsburgh area, Charity and federal narcotic agent George T. Dillworth met at the Federal Bureau of Narcotics office in Pittsburgh. Charity was searched and found to possess neither money nor narcotics. Charity and agent Dillworth then proceeded to the 6300 block of Frankstown Avenue in Pittsburgh. They parked their car and as Charity got out of it he was called by Raysor who was seated in a car across the street. Mosley was standing next to the car in which Raysor was seated. Both Charity and agent Dillworth crossed the street and approached Raysor and Mosley—Charity going up to them and Dillworth remaining some fifteen feet behind. Raysor said to Charity that he was "all right" (that he had narcotics), and Charity replied that he would like to "cop" (to purchase narcotics). After some discussion a sale was agreed upon of a "spoon" for $18.50. Charity said he would have to get the money and

1. 21 U.S.C.A. § 174, which provides in applicable part:

"Whoever fraudulently or knowingly imports * * * any narcotic drug into the United States * * * contrary to law, or * * * sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported * * * knowing the same to have been imported * * * contrary to law, or conspires to commit any of such acts * * * shall be imprisoned * * * and * * * may be fined * * *.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

he walked back to where agent Dillworth was standing. Agent Dillworth openly counted out the money to Charity. Charity kept it in his hand, returned and handed it to Raysor. Raysor in turn counted it and handed it to Mosley who was standing at most only a foot from Raysor. Raysor then told Charity to meet Mosley on the corner of Paulson and Frankstown Avenues, a block away, in five minutes. Charity began walking to the corner, Mosley got in a car and drove off, and agent Dillworth proceeded to Paulson Avenue by car and parked about fifteen feet from the corner.

In about ten minutes Mosley appeared at the corner, parked his car, and handed a small brown package to Charity who was standing on the corner in full view of Dillworth. Charity then crossed the street and handed the package to Dillworth through the open window of Dillworth's car while Mosley walked to his car. The package was subsequently determined to contain narcotics.

With respect to the second count of the indictment, it was testified that agent Dillworth went to Charity's home on December 21, 1959. Charity was again searched by agent Dillworth and found to possess neither money nor narcotics. Charity and agent Dillworth then proceeded to Frankstown Avenue and entered a bar there. At the entrance of the bar, and before entering, Dillworth gave Charity $36.00. They both then entered the bar and sat down at a table at which Raysor was seated. Charity asked Raysor "Do you have any turkeys?" Raysor replied "Yes, how many do you want?" Charity said two and asked how much they would cost. Raysor replied $36.00. Charity handed Raysor the money and the latter counted it. Raysor then stood up and walked over to Mosley who was standing at the bar and spoke with him. Raysor returned to the table and said "Gene [Mosley] will bring the stuff." Raysor and Mosley then left the bar and walked to an alleyway nearby where they disappeared from view. Mosley alone came out of the alley in three to five minutes and re-entered the bar. Mosley

walked up to Charity and agent Dillworth who were standing at the bar, walked between the two of them and handed Charity two small brown packages. Charity thereupon, in full view of Mosley, handed the two packages to Dillworth; Charity and Dillworth then left the bar. The packages were subsequently determined to contain narcotics.

The facts as stated disclose that while the indictment in its two counts charged the defendants with sales to "George T. Dillworth, Narcotic Agent", the Government's evidence was that the sales were made to Thomas Charity who was not a narcotic agent but a decoy—known in the vernacular as a "stool pigeon".

The Government's contention below and here is that its evidence actually proved sales to Dillworth on the theory that Charity was Dillworth's agent and a sale to an agent is a sale to his principal. The trial judge squarely presented the case to the jury on the Government's theory, stating:

"Well now, we have an ordinary law in commercial law, principal in law, principal and agent. The agent is the one who acts for the principal. The principal is the one who stands back and hires, employs or engages someone to act for him, the law of principal and agent. The Government charges in this case that the sale is actually to Dillworth, the narcotic agent, and of course, you will recall the Government's testimony that they sort of cleaned that fellow Charity out before they sent him out on this task. He was using money handed to him by Dillworth and immediately after this transaction, the results of the purchase were handed back to Dillworth. I think under the testimony, the jury may find the sale was to Dillworth under the principles of agency, but if the sale isn't to Dillworth * * * they are not guilty."

The Government urges here that we recognized "this principle of agency in this type of case in United States v. Sawyer [3 Cir.], 210 F.2d 169, 170 (1954),

and United States v. Prince [3 Cir.], 264 F.2d 850 (1959) * * *."

The Government is in error in this respect. In Sawyer the purchaser was a federal narcotic agent in search of evidence of dope peddling. Feigning great distress, he accosted the defendant Sawyer and asked him if he could get him some dope. "Sawyer, moved by this apparent suffering [of the federal narcotic agent] and knowing where heroin could be purchased, took twenty dollars as then proffered, went to a nearby hotel, purchased some heroin for twenty dollars and brought it back and gave it to the stranger [the federal agent]." On the score of the foregoing testimony we stated that "the court should at least have pointed out to the jury that if they believed that the federal agent asked the defendant to get some heroin for him and thereupon the defendant undertook to act in the prospective purchaser's behalf rather than his own, and in so doing purchased the drug from a third person with whom he was not associated in selling, and thereafter delivered it to the buyer, the defendant would not be a seller and could not be convicted under this indictment." 210 F.2d at page 170. Sawyer is entirely inapposite here.

The same is true with respect to Prince. There, a federal narcotic agent directly arranged by telephone with the defendant Prince to buy heroin from him and sent a special government employee with the money to get the drug. One of the defenses was that the defendant Prince had acted as agent of either the federal narcotic agent or his pick-up employee in the purchase of the narcotic and with respect to it we said (264 F.2d at page 852): "Admittedly if that were the fact he could not have been convicted under the indictment" which had charged him with acting as the principal in making the sale.

Several other cases cited by the Government in support of its principal and agent theory are also inapposite.

On the other hand there are a number of cases in which it has been squarely held that, where there is a variance between the indictment and the proof with respect to the person named in the indictment as the buyer of the contraband, such a variance is fatal and a conviction cannot be permitted to stand.

In Kennard v. State, 1911, 64 Tex.Cr.R. 7, 141 S.W. 88, an indictment charged an illegal sale of intoxicating liquors to one Taylor. The evidence established that Taylor had asked one Sell to buy some whiskey for him and had given him a dollar to do so. Sell went to the defendant Kennard and told him he would like to buy some whiskey for Taylor. Despite the circumstance that Sell had disclosed to the defendant that he was acting as agent for Taylor in making the purchase, the Court of Criminal Appeals of Texas held that the sale was not to Taylor but to Sell and that, since the indictment charged the sale had been made to Taylor, there was a variance which required reversal of the conviction.

To the same effect see Whitstone v. State, 1911, 64 Tex.Cr.R. 168, 141 S.W. 951; Rivas v. State, 1926, 103 Tex.Cr.R. 607, 281 S.W. 848 and Berry v. State, 1928, 111 Tex.Cr.R. 281, 12 S.W.2d 581.

In the United States v. Bach, 7 Cir., 1945, 151 F.2d 177, it was said at page 179:

"If the defendant had been indicted for selling whiskey to Bernard Singer, and had been convicted on evidence which established that he sold the whiskey to Herman Singer, the variance might be serious but no such a situation exists. The evidence is conclusive that the sale was made to Bernard Singer, as charged in the indictment."

The holdings in the cases cited are in accord with the teaching of Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. It was there said, with respect to what is now 28 U.S.C. § 2111 (295 U.S. at page 82, 155 S.Ct. at page 630):

"The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely

informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense (citing cases)."

■ Aside from the first requirement stated, it is apparent that the defendants in the instant case would not be protected against another prosecution for the sale of heroin made to Charity should their conviction for making the sales to Dillworth be permitted to stand.

The Supreme Court of the United States in Stirone v. United States, 1960, 361 U.S. 212, at pages 217–218, 80 S.Ct. 270, at page 273, 4 L.Ed.2d 252, recently emphasized "the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury", stating:

"Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error * * * The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."

■ What has been said requires us to hold that there was in the instant case a fatal variance between the indictment which charged sales to Dillworth and the proofs which established them to have been made to Charity so as to require reversal of the judgment of conviction below.

The offenses here involved are felonies and the defendants are entitled to rights established by law. We have no recourse but to reject the Government's effort to salvage its manifestly sloppy indictment by obtaining our sanction of its novel theory that the principles of agency are here applicable to achieve that end.

■ We note that there is no merit to the contention advanced by the defendant

Raysor, mentioned at the outset of this opinion, that his "possession" of the narcotics sold was not established by "direct evidence" and that his conviction must be reversed for that reason. Our holding in United States v. Malfi, 3 Cir., 1959, 264 F.2d 147 that "possession" may be established by circumstantial evidence is dispositive here. Other circuits are in accord: Cellino v. United States, 9 Cir., 1960, 276 F.2d 941; United States v. Pinna, 7 Cir., 1956, 229 F.2d 216; United States v. Pisano, 7 Cir., 1951, 193 F.2d 355, 31 A.L.R.2d 409. Harris v. United States, 1959, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597 is not to the contrary, as the defendants here assert. In that case there was "direct evidence" of the possession adduced at the trial and the Supreme Court's statement (359 U.S. at pages 23–24, 79 S.Ct. at page 564) that "[T]o take advantage of the presumption of § 174 it is necessary only to prove possession by direct evidence" must be read in the light of the record in that case.

We have made this brief comment on the point raised as to possession since the defendants may see fit to assert it again in the event they may come to trial on properly drawn indictments, the statute of limitations not yet having tolled.

For the reasons stated the judgments of conviction and sentence will be reversed and the cause remanded to the District Court with directions to proceed in accordance with this Opinion.

GOODRICH, Circuit Judge (dissenting).

I do not share the majority's difficulty with a conviction on the charge of a sale to Dillworth. Dillworth put up the money and he got the merchandise. Furthermore, Dillworth was at hand when both transactions occurred. We need not go into the "witty diversities of the law of sales" to determine whether title passed directly to Dillworth from the seller. It seems to me that the indictment charged what happened and is sufficient to support a conviction.