**UNITED STATES of America**
**v.**
**Robert Otha JONES.**
**Crim. No. 72–265.**

United States District Court,
E. D. Pennsylvania.

July 16, 1973.

John Penrose, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Harry S. Tischler, Defender Assn. of Philadelphia, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

This matter comes before the Court on the defendant's motion for a new trial and/or judgment of acquittal after his conviction of possession with the intent to distribute a Schedule I narcotic drug controlled substance, in violation of 21 U.S.C. § 841(a)(1). The defendant's original motion raised ten issues for the Court to decide, but in his brief the defendant has narrowed the issues to five: (i) did the government fail to establish possession by the defendant? (ii) did the government fail to establish the chain of custody of the seized narcotics? (iii) was it error for the government to fail to call and/or make available the informer? (iv) did the government misinform the jury as to vital information concerning the informant? and (v) was it error for the United States Attorney to argue the defendant's narcotic addiction to the jury?

### I. *Did the Government Fail to Establish Possession by the Defendant?*

No. At the trial, Agent Glenn C. Brown of the Bureau of Narcotics and Dangerous Drugs testified that on August 26, 1971 he met with other surveillance agents in the Philadelphia area and plans were made to attempt an undercover purchase of narcotics from the

defendant, Robert Otha Jones. Later that day, Agent Brown went into the Wanda Inn with an informant, identified as Aubrey Lewis, and another agent. Approximately fifteen minutes later, the defendant came in and told Agent Brown that he, the defendant, had approximately one and a half ounces of heroin to sell for $1800.00. The defendant assured the agent that the heroin could be cut five times, but said that he would not personally carry the drugs, as he was "hot", and told the agent not to follow him to his "connection." Agent Brown told the defendant that he would have to see a sample of the heroin before he would buy it. The defendant then told Agent Brown that he would have to make a telephone call to see if he could get a sample. The defendant then left the bar and returned in approximately ten to fifteen minutes and approached Agent Brown and informed him that a sample would be arriving in about fifteen minutes. Mr. Jones again left the bar and returned a short time later and took a seat across from where Agent Brown was seated. Defendant called the informant over to him. Agent Brown observed the defendant and the informant move their hands under the table while engaged in a brief conversation. The informant then returned to Agent Brown and placed two glassine envelopes in the agent's hands. Agent Brown then called the defendant over, and showed the defendant the two envelopes; the defendant pointed to one of the envelopes and said that envelope is ready to be cut and that the other envelope was ready for the street. Subsequently, the defendant informed the agent that there was a narcotics agent outside the inn and said that if Agent Brown wanted the deal to continue that he would have to give the informant the money and that the informant would return with the narcotics. After Agent Brown rejected use of the informer as the intermediary, the defendant gave him a telephone number and asked Brown to call him the next day to make further arrangements to purchase the narcotics.

As the Court charged the jury, the law recognizes that there are two kinds of possession—actual and constructive. A person who knowingly has direct physical control over a thing is in actual possession of it, while a person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise some dominion or control over a thing, either directly or through another person, is in constructive possession. There was ample evidence to establish beyond a reasonable doubt that the defendant constructively possessed the narcotics with the intent to distribute, and there was also sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant had actual possession of the narcotics with the intent to distribute. While the Government's case would have been stronger had they called the informant as a witness, the informer's testimony was not required to establish the defendant's possession. Compare United States v. Crippen, 459 F.2d 1387, 1388 (3rd Cir. 1972); United States v. Raysor, 294 F.2d 563, 567 (3rd Cir. 1961).

The defendant, relying on United States v. Russo, 123 F.2d 420, 422 (3rd Cir. 1941), argues that the proof of constructive possession is fatally deficient on the ground that it is based on an inference of intent to distribute derived from an inference of possession. In the *Russo* case, the Court held that guilty intent cannot be implied from possession when possession is implied from an innocent business relationship alone. See United States v. Grasso, 3 Cir., 437 F.2d 317, 319–320./ In *Russo*, the Court carefully distinguishes the line of cases wherein there was other evidence from which the jury could infer guilty knowledge or intent, apart from the implied possession. In this case, there is ample evidence from which the jury could infer Mr. Jones' intent to dis-

tribute, apart from his possession. More specifically, the testimony that the informant handed two envelopes to Agent Brown, later shown to be narcotics, after Brown's prior conversations with the defendant on which the defendant agreed to sell narcotics, coupled with the defendant's statements when he was shown the envelopes that one envelope was ready to be cut and that the other envelope was ready for the street, provided sufficient circumstantial evidence from which the jury could find beyond a reasonable doubt the defendant possessed narcotics with the intent to distribute.

II. *Did the Government Fail to Establish the Chain of Custody of the Seized Narcotics?*

■ No. The defense counsel stipulated with the government that the envelopes introduced by the government at trial contained .05 grams and .81 grams of heroin, respectively. The defendant never objected to the use of these exhibits during the government's case; and, furthermore, when the United States Attorney moved for the admission of the envelopes as government exhibits, the defense stated "There is no objection." (N.T. 2–24). Although defense counsel mentioned the chain of custody in his motion for judgment of acquittal, he did not object to the admission into evidence. In the absence of plain error, matters not called to the attention of the trial judge cannot be subsequently raised in the post-trial stages of the proceeding. United States v. Hykel, 461 F. 2d 721, 728 (3rd Cir. 1972). The purpose of Rule 51, Federal Rules of Criminal Procedure, is to require counsel to make known to the Court an objection to a proposed action of the Court, and the grounds therefor, in order to assure that the trial court makes an informed decision and allows the judge and opposing counsel to take whatever corrective action is needed. United States v. Walker, 146 U.S.App.D.C. 95, 449 F.2d 1171 (1971). The Court was never asked to bar the admissibility of the narcotics in the instant case, and no plain error has been committed by the Court in allowing the narcotics to be admitted into evidence.

■■ Even apart from defense counsel's failure to object, however, the Court finds no merit in the defendant's argument on the chain of custody. The defendant argues that the failure of the government to call the informant who handled the narcotics creates a fatal gap in the chain of custody. The defendant also claims that the failure of the government agent to permanently seal the narcotics and check the sign-in sign-out sheet for the safe where the narcotics were temporarily stored creates an additional missing link in the chain of custody. Tangible objects become admissible into evidence when the government establishes that the evidence is in substantially the same condition as it was when it was originally seized. United States v. Clark, 425 F.2d 827, 832 (3rd Cir. 1970). The government must eliminate the possibilities of misidentification and adulteration, not absolutely, but as a matter of reasonable certainty. United States v. Robinson, 145 U.S.App.D.C. 46, 447 F.2d 1215, 1220 (1971). Under the circumstances of this case, the government was not obligated to call the informant to establish the chain of custody. The narcotics came into the government's custody when they were received by Agent Brown. It was for the jury to determine whether the envelopes given to Agent Brown were in the possession of the defendant. Even if the government was required to establish the chain of custody from the moment the envelopes were handed to the informant, the government satisfied this burden through Agent Brown, who testified that the defendant came over to him after the informant gave him the envelopes and pointed to one of the envelopes and said it was ready for the street and stated that the other envelope could be cut. The defendant's argument that the informer's testimony was necessary is really an attack on the sufficiency of the evidence, and not the admissibility of

the narcotics. The government established as a matter of reasonable certainty the chain of custody of the envelopes once they were placed in the hands of Agent Brown. As Agent Abrams testified, Agent Brown gave the envelopes to Agent McCready, who passed them to Abrams, who then performed a Marquis field test which was positive for opium derivatives. Agent Abrams testified that he weighed and marked the envelopes and put them under a temporary seal and placed them in a safe at his office at approximately 2:00 A.M. on August 27, 1971. Agent Abrams testified that he removed the envelopes from the safe at 8:30 A.M. that same morning but that he did not check the sign-in sign-out sheet to determine whether anyone else had entered the government safe between 2:00 A.M. and 8:30 A.M. that morning. This is not a fatal gap in the chain of custody under the circumstances of this case. The government eliminated the possibilities of misidentification and adulteration as a matter of reasonable certainty in this case, particularly in view of the fact that a temporary seal was placed on the envelopes containing the narcotics.

III. *Was It Error for the Government to Fail to Call and/or Make Available the Informer?*

■ No. The defendant claims that the government's case was fatally defective due to its failure to call and/or make available the informant, thereby violating the defendant's constitutional right to confront the witnesses against him, relying principally on Roviaro v. United States, 353 U.S. 53, 63–64, 77 S. Ct. 623, 1 L.Ed.2d 639 (1957). The defendant's reliance on *Roviaro* is misplaced, as that case merely holds that the disclosure of an informant's identity is required where disclosure is relevant and helpful to the defense of the accused, or is essential to a fair determination of the case. In the instant case, the government disclosed the informer's identity at trial and made reasonable ef-

forts to have him available to the defense. The government case agent testified that he instructed agents to make an effort to locate the informant at his last known address, and that pursuant to his instruction government agents visited the informant's residence and telephoned and personally visited the informant's last known place of business. Although the government case agent first said that the informant's last known address was 2908 West Montgomery Street (N.T. 2–35) and later twice said that the informer's address was 2908 Westmont Street (N.T. 2–38), looking at the record as a whole, there is no question that this disparity was caused by the similarity of the addresses and not by any intent to confuse the defense. Furthermore, Agent Abrams testified that he had not been in contact with the informant since February 8, 1972 and indicated that the informer's status as a government cooperative had been terminated one or two months after the February 8, 1972 meeting. Agent Abrams also testified that during the two months preceding the trial he had interviewed at least twenty-five informants and asked most of them if they knew the whereabouts of the informant Lewis, all to no avail (N.T. 2–39–40). The government acted in good faith and made reasonable efforts to make the informant available to the defense and, thus, satisfied its burden with regard to the informant. United States v. Moore, 446 F.2d 448 (3rd Cir. 1971).

IV. *Did the Government Case Agent Misinform the Jury as to Vital Information Concerning the Informant?*

■ No. On cross-examination of the government case agent, the following colloquy occurred, before the informer's name was revealed:

BY MR. TISCHLER

Q. *To your knowledge,* was the informant involved in this case either

on probation or defendant in cases open against him last August?

A. No, he did not (N.T. 1–61) (emphasis added).

At a later point, when the case agent was recalled to reveal the informer's identity, the following exchange occurred:

BY MR. TISCHLER

Q. Agent Abrams, who was your informer?

A. The informant's name was Aubrey Lewis.

A. Aubrey Lewis?

Do you presently have in your file or with you any information concerning Mr. Lewis' prior criminal record?

A. I know that he does have a prior criminal record with the Philadelphia Police Department. I could get specific if I had to, but I don't have the information available at this time.

Q. Do you recall what the offenses were that he was convicted of?

A. No, sir, I am sorry, I don't.

Q. Do you recall if there were any drug-related offenses?

A. I can't recall the record (N.T. 2–6–7) at all, to be quite honest.

At the close of the government's case, the United States Attorney advised the Court and counsel for the defendant at side bar that the government had checked and discovered that the informant had eight prior arrests for the period between 1959 through 1968, as well as a 1969 arrest for illegal possession and sale of narcotics, which was still pending at the time of trial, and a 1970 conviction for failure to comply with a court order. The United States Attorney and the defense agreed to stipulate that the prosecution had checked the criminal record and state it thus to the jury (N.T. 2–45–46). At the outset of the defendant's case, defense counsel advised the jury of the informant's criminal record (N.T. 2–50). The defense contends that it was never informed of a second outstanding state court drug case and was not informed that a bench warrant was outstanding for the informant on the drug cases. The defendant has presented this Court with no evidence that the government case agent or the United States Attorney deliberately concealed part of the informer's criminal record. In this case, the United States Attorney furnished the criminal record of the informant in the condition it was received by him as a result of the government's investigation. The government did not withhold any portion of the informant's criminal record, and their search appears to have been a reasonable one. Furthermore, the errors of omission in the informant's criminal record as presented to the jury did not constitute prejudicial error in this case.

V. *Was It Error for the United States Attorney to Argue the Defendant's Narcotics Addiction to the Jury?*

 No. The defendant claims that it was error for the United States Attorney to argue the defendant's narcotics addiction to the jury, relying on Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). In his closing argument, the United States Attorney argued:

Now the defendant told you that he was at least at some point addicted to various types of narcotic drugs—heroin, cocaine—and that he snorted these two substances last year and also this year, and probably in years prior. I didn't go into it too much.

He did admit that in 1971—and this offense occurred in 1971—he was using both heroin and cocaine and he said that, well, some days he spent up to $20, if I recall his testimony, on this habit. He indicated that he was working at that time, he was making somewhere between $100 and $150 a

week; but he claimed he was taking care of his family but he was spending every spare cent he had to support his habit.

Now he also admitted on direct examination in response to his attorney's question that he had never sold narcotics. He insisted he had never sold it; yet he had this habit, it was a considerable habit. It could have been as much as $20 or $30 a day at times.

He was constantly trying to kick it but he didn't have much luck during 1971; yet he steadfastly maintains that he has never sold narcotics. Is it credible to believe that that could be true?

This is our case. We claim he did distribute narcotics. Even though there wasn't a sale, it is still just as much a crime to distribute something that is illegal like heroin.

Now is it really incredible for a person with that kind of a habit never to have sold or distributed narcotics? I think you should consider that carefully and consider it when you think about all of the testimony in this case. I don't think it is credible. (N.T. Supplement 8–9).

The defendant has misconstrued the United States Attorney's argument, which was merely an attack on the credibility of the defendant, and a suggestion as to a possible motive for the crime. The intent of *Robinson* was to prohibit criminal prosecutions based on addiction alone. This intent is not violated by using the defendant's expensive narcotics habit and limited income, both of which were in evidence, to impeach his credibility and suggest a motive for the crime. Addiction is not a valid defense to possession of narcotics with the intent to distribute. United States v. Moore, 486 F.2d 1139 (D.C.Cir. May 14, 1973) (en banc).

Accordingly, the Court having found all the grounds in support of the defendant's motion for judgment of acquittal and/or new trial to be without merit, the following Order is entered:

## ORDER

And now, this 16th day of July 1973, it is ordered that the defendant's motion for a judgment of acquittal and/or new trial is denied.