## HARRIS v. UNITED STATES.

No. 11.   Argued January 13–14, 1959.—Decided March 2, 1959.

*Sidney M. Glazer* argued the cause for petitioner. With him on the brief were *Morris A. Shenker* and *Bernard J. Mellman.*

*John L. Murphy* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Anderson, Beatrice Rosenberg* and *Jerome M. Feit.*

MR. JUSTICE CLARK delivered the opinion of the Court.

In this narcotics case a two-count indictment charged petitioner with (1) the purchase of 224 grains of heroin from an unstamped package, in violation of 26 U. S. C. § 4704 (a); [1] and (2) receiving and concealing this same

[1] Section 4704 (a) of the Internal Revenue Code of 1954, which provides as follows:

"It shall be unlawful for any person to purchase, sell, dispense,

drug knowing it to have been unlawfully imported, in violation of 21 U. S. C. § 174.[2] The Government introduced into evidence the heroin itself, and testimony that petitioner had been in possession of it. On each count it relied, for proof of the elements of the offense, on the statutory presumptions provided by Congress. While petitioner took the stand, his defense was an alibi and there was therefore a total absence of any explanation by him of his possession of the prohibited drug. Upon being found guilty on each count by a jury, on an instruction that proof of possession of unstamped heroin, in the absence of explanation, might support a conviction on each of the charges in view of the separate statutory presumptions, petitioner was sentenced to consecutive sentences of five years' imprisonment and a $1 fine on each count. Attack is made not only on the validity of the instructions but also on the consecutive sentences. The

or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."
See also § 7237 of the Internal Revenue Code of 1954, which at the time of this trial provided a maximum penalty, for first offenders, of a $2,000 fine and imprisonment for five years.

[2] Section 2 (c) of the Narcotic Drugs Import and Export Act, 35 Stat. 614, as amended by the Act of November 2, 1951, 65 Stat. 767, which provided in pertinent part as follows:

"Whoever . . . receives, conceals, . . . or in any manner facilitates the transportation, concealment, or sale of any . . . narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, . . . shall be fined not more than $2,000 and imprisoned not less than two or more than five years . . . .

"Whenever on trial for a violation of this subdivision the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

Court of Appeals affirmed, 248 F. 2d 196 (C. A. 8th Cir., 1957). In view of the importance of the question in the enforcement of the narcotic laws, we granted certiorari. 357 U. S. 935 (1958). We agree with the Court of Appeals. This disposition requires neither a detail of the facts which may be found in the opinion of the Court of Appeals, *supra*, nor of the court's instructions, of which petitioner now complains.[3]

Congress provided in 1919 that buying narcotics, except in or from the original stamped package, was an offense [4] punishable by fine of not more than $2,000 and imprisonment for not more than five years.[5] The 1919 Act specifically provided that "the absence of appropriate tax-paid stamps . . . shall be prima facie evidence of a violation of this section by the person in whose possession same may be found." [6] Long before, on February 9, 1909, Congress had provided that receiving and concealing unlawfully imported narcotics should likewise be an offense. The Act provided that once the defendant on trial "is shown to have, or to have had, possession of [the narcotic drug] such possession shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury." [7]

Petitioner does not challenge the power of the Congress to adopt these statutes, nor does he attack the separateness of the offenses created, the distinct punishments provided, nor the presumptions therein authorized. But he says that where the presumptions are coupled with a single act of possession of unstamped narcotics cumulative sentences are not permissible and the ones here imposed must

---

[3] Petitioner made no objection to the court's charge at the time of the trial. See Fed. Rules Crim. Proc., 30.

[4] 40 Stat. 1131.

[5] 38 Stat. 789.

[6] 40 Stat. 1131.

[7] 35 Stat. 614.

fall under the doctrine of *Blockburger* v. *United States*, 284 U. S. 299 (1932). We think not.

As we see it, *Gore* v. *United States,* 357 U. S. 386 (1958), controls the question here. There, consecutive sentences were upheld on three counts of an indictment charging (1) sale of narcotics not pursuant to a written order form; (2) purchase, sale and distribution not in or from a stamped package; and (3) transportation and concealment of illegally imported narcotics. The three offenses derived from one transaction, a sale of narcotics. It will be noted that two of the offenses there charged are present here where the one fact proved by direct evidence is possession, rather than a sale. The Court reasoned that "three violations of three separate offenses created by Congress at three different times;" indicated a clear and continuing purpose on its part "of dealing more and more strictly with, and seeking to throttle more and more by different legal devices, the traffic in narcotics. Both in the unfolding of the substantive provisions of law and in the scale of punishments, Congress has manifested an attitude not of lenity but of severity toward violation of the narcotics laws." *Supra,* at 391.[8] We see no significant differences between the two cases. The direct proof in *Gore* was of a sale of heroin without a written order charged in one of the three counts upon which the consecutive sentences were based. Resort to the statutory presumptions was made to establish the other two counts on which those sentences were assessed. Here the direct evidence proved possession of the unstamped drug, and resort was made to the statutory presumptions for support of the two offenses charged.

---

[8] Although enacted subsequent to this conviction, the continuing purpose of Congress to wipe out the narcotics traffic is shown in § 201 of the Narcotic Control Act of 1956, 70 Stat. 572, 18 U. S. C. (1952 ed., Supp. V) § 1402, wholly outlawing any possession of heroin.

Petitioner insists that each offense here requires proof of only the single fact of possession, which brings it within the rule in *Blockburger, supra.* However, petitioner completely overlooks the fact that the "acts or transactions" prohibited by the respective statutes cannot be equated to possession alone. Let us analyze the offenses. Under the first count of the indictment, the prosecution must prove a purchase of narcotics, other than in or from the original stamped package. In order to establish these ultimate facts, the prosecutor may put on direct evidence of possession of the unstamped heroin and the statutory presumption of § 4704 (a) then has the effect of establishing, prima facie, that there was in fact a purchase and that the purchase was other than in or from the original stamped package. In this case, the heroin itself was introduced in evidence, thus the jury could determine whether or not it was stamped. Similarly, under the second count, the prosecution was obligated to prove three ultimate facts: (1) that the heroin was received and concealed; (2) that it had been imported contrary to law; and (3) that petitioner knew of the unlawful importation. After putting on direct evidence of the possession, the prosecution was aided by the statutory presumption of § 174 that the ultimate facts of the violation—entirely different, it must be noted, from those of the first count—were also present.

Thus, the *violation,* as distinguished from the direct evidence offered to prove that violation, was distinctly different under each of the respective statutes. Instead of limiting his proof to an alibi, petitioner could, by offering evidence tending to controvert one presumption or the other as to the ultimate facts, have earned an acquittal on either count and still have been found guilty on the other. Furthermore, to take advantage of the presumption of § 174 it is necessary only to prove possession

24

by direct evidence; whereas to take advantage of the presumption of § 4704 (a) it is necessary to prove by direct evidence that the narcotic was unstamped as well as that it was in the defendant's possession. It follows, even if the *Blockburger* test were applicable, that the offenses were separate and that consecutive sentences could be imposed on each count.

We have considered the other contentions raised by petitioner and found them to be without merit. The judgment of the Court of Appeals is

*Affirmed.*

MR. CHIEF JUSTICE WARREN concurs in the result.

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS dissent.