**Theodore H. MILLER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18571.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 16, 1964.

Decided May 5, 1965.

Petition for Rehearing En Banc
Denied June 14, 1965.

J. Skelly Wright, Circuit Judge, dissented.

---

Mr. Hamilton Carothers, Washington, D. C., with whom Mr. Charles W. Havens, III, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. Martin R. Hoffmann, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and DANAHER and WRIGHT, Circuit Judges.

DANAHER, Circuit Judge.

Appellant was convicted and was sentenced to serve concurrent sentences on two counts of an indictment which had charged him with violation of 26 U.S.C. § 4704(a) (1958) [1] and 21 U.S.C. § 174 (1958).[2] Received in evidence against

1. Sec. 4704(a) makes it unlawful for any person

"to purchase, sell, dispense, or distribute narcotic drugs except in * * * or from the original stamped package; and the absence of appropriate tax-paid stamps from narcotic drugs shall be prima facie evidence of a violation * * * by the person in whose possession the same may be found."

2. Sec. 174 provides that one who

"receives, conceals * * * or in any manner facilities the transportation, concealment, or sale of any * * * narcotic drug * * * knowing the same to have been imported * * * contrary to law [shall be sentenced] * * *.

"Whenever on trial for a violation of this section the defendant is shown *to have or to have had possession of the narcotic drug*, such possession shall be deemed sufficient evidence to

the appellant were some 54 gelatin capsules said by the Government chemist to have contained heroin, a derivative of opium. In addition, the officers had found an envelope containing a quantity of heroin. This appeal presents questions as to the instructions to the jury respecting the appellant's possession of the narcotics, and as to possible prejudice in the selection of the jury.

## I

Officers with a search warrant had presented themselves at 604 R Street, N. W. in the District of Columbia. After responding to their knock on the door, the appellant admitted the officers. They asked if he had narcotics in the premises, and the appellant answered affirmatively. He took them to the second floor and pointed toward a dresser drawer, which Officer Paul opened. There he found a large quantity of new gelatin capsules, some used capsules with traces of a white powder in them and a strainer. The officers asked if there were "other narcotics" in the premises, and appellant responded he would take the officers downstairs where he had narcotics in his coat pocket. The officers followed him downstairs. There on the foot of a bed [3] was a gray jacket which matched the appellant's trousers. The appellant said that the narcotics were "in there."

In a pocket of that jacket Officer Paul found a "clear plastic vial" containing 54 gelatin capsules with white powder in them, and a brown envelope which contained a quantity of loose white powder. Officer Paul thereupon arrested the appellant.[4] The powder, so found, proved to be heroin, the chemist later testified.

The appellant told the police that he had been in business only a short period of time, that he was buying the house, was in the process of remodeling it and that after he had finished "fixing it up and everything else, he was going to quit the narcotics business." He stated that he had been obtaining narcotics from a person he named, that he would purchase a half ounce two or three times a week, paying $100 for the half ounce and would then cap up the heroin and make 200 capsules out of each half ounce and sell them. He said he did not use drugs.

At trial the appellant testified that his salary was $70 a week plus tips; he had a son in college; he had made a $400 down payment on the house which, at closing was to cost $13,950; the remodeling expense was to be $2,500; he had three telephones in the house entailing a monthly charge of about $30; he was supporting Portia Owens and his infant son and was making a daily payment of $3 or $4 to her "cousin" who was to keep his eye on the place while the workmen were remodeling; he had never seen filled capsules before they were taken from his coat pocket; all he knew about narcotics was what he had read in the papers.[5]

---

authorize conviction *unless the defendant explains the possession to the satisfaction of the jury.*" (Emphasis added.)

3. A woman named Portia Owens was in the bed. She is the mother of the appellant's infant son. She was not called to testify, but the appellant testified she is an addict. The appellant stated later that he worked at the Casino Royal and "that he would take the narcotics with him because he didn't want to leave them with the girl in the house."

4. Also arrested that morning at 604 R Street was one Walter J. Welch who was separately indicted. Welch and this appellant filed separate motions to suppress, and both were heard together on January 10, 1964. This appellant at that hearing was represented by the lawyer who conducted his trial. The Welch trial got under way January 15, 1964. On voir dire in the Welch case no mention was made before the prospective jurors of the impending trial of this appellant which commenced January 20, 1964.

Neither at Miller's voir dire nor throughout the trial was Welch's name mentioned.

5. On cross examination by way of impeachment it was brought out that appellant had been convicted of four charges of housebreaking and one of larceny in 1948 and had been convicted of attempted housebreaking and possession of burglary tools in 1955. It was on his way

No other witness was called by the defense.

The trial judge correctly instructed the jury that unless the Government had proved beyond a reasonable doubt that *this appellant* had either actual or constructive possession [6] of the drugs in evidence, the jury was bound to bring in a verdict of not guilty.

The defense counsel announced himself as satisfied with the charge as given in all respects but one. He said that since there was evidence that another person was in the room where the officers had found the narcotics, and that such person "also had the opportunity to have been in possession of those drugs," the jury should not speculate "between the Defendant and such other person, but should be convinced beyond a reasonable doubt that the Defendant was in possession."

"The Court: I so charged the jury. I have charged the jury that they must find beyond a reasonable doubt that *the Defendant* had possession." (Emphasis added.)

No doubt from an abundance of caution, the judge expanded his earlier instruction on possession but reemphasized that if "the Government has not proved beyond a reasonable doubt that the Defendant had either actual or constructive possession of the drugs in question, then your verdict must be not guilty." After colloquy with counsel the judge further explained to the jury:

"Well, obviously, in both instances the burden is on the Government to prove beyond a reasonable doubt that the Defendant did have possession. He says he didn't have possession. Obviously, if he didn't have possession, he would not be called upon to explain it.

"He says he didn't have possession. So if possession was in someone else, then he wouldn't be required to explain a possession which he didn't have, according to his theory."

We are satisfied that the trial judge correctly and adequately took into account the argument of appellant's counsel that since Portia Owens was in the room, she, rather than the appellant, might have possessed the narcotics. As the trial judge said, if the jury believed that the Government had not proved Miller to be in possession of the narcotics, he should be found not guilty. It is obvious from the verdict, thoroughly supported by the record, that the jury did not believe the appellant. It is beyond question that the "possession" under discussion may be either actual or constructive in that the accused is in position to exercise dominion and control over the contraband.[7]

## II

Preliminary to the selection of the Miller jury,[8] the prosecutor briefly outlined the case, noting that the offense was alleged to have occurred on April 8, 1963 at 7:20 A.M. "at the Defendant's home at 604 R Street, Northwest, here

back from prison after serving his sentence on the latter charge that he first met and presently took up with Portia Owens.

6. The Supreme Court has held that "to take advantage of the presumption of § 174 it is necessary only to prove possession by direct evidence; whereas to take advantage of the presumption of § 4704(a) it is necessary to prove by direct evidence that the narcotic was unstamped as well as that it was in the defendant's possession." Harris v. United States, 359 U.S. 19, 23–24, 79 S.Ct. 560, 564, 3 L.Ed.2d 597 (1959).

7. Compare the charge as outlined in Johnson v. United States, 270 F.2d 721, 724, 725 (9 Cir. 1959), cert. denied, 362 U.S. 937, 80 S.Ct. 759, 4 L.Ed.2d 751 (1960); and see generally, Hunter v. United States, 339 F.2d 425, 426 (9 Cir. 1964); Rodella v. United States, 286 F.2d 306, 312 and cases cited (9 Cir. 1960), cert. denied, 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961); cf. White v. United States, 315 F.2d 113 (9 Cir.), cert. denied, 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed. 2d 55 (1963).

8. We may judicially notice that in the District Court as a matter of common practice in the usual criminal case involving a single defendant, District Judges will have sent to their courtrooms some 22 to 26 prospective jurors.

in the District of Columbia." After introducing each of the witnesses for the Government, the prosecutor said:

"I would like to ask you ladies and gentlemen of the prospective jury, first of all, whether any of you *have heard anything about this case* or read anything about this case before coming here today as prospective jurors." (Emphasis supplied.)

He asked various other questions designed to elicit a possible ground for disqualification of any juror and in particular whether there might be "any reason why you could not sit in the case and render a fair and impartial verdict based on the facts and the law as His Honor will instruct you? Does any reason suggest itself whatever?" Defense counsel then interrogated the jury, a panel was drawn, and defense counsel excused one juror. No other disqualification was made manifest. Neither attorney had mentioned the *Welch* case,[9] and both expressed themselves as satisfied with the jury as drawn.

The trial went forward and before excusing the jury overnight, the trial judge admonished the jurors not to discuss the evidence and not to permit anyone to talk about it in their presence. He added that they were not to

"talk about it even among yourselves until the time comes for the Court to submit the case to you for your determination. At that time you will be expected to decide the case *based solely on the evidence which you hear in this courtroom during the course of the trial * * *.*

"You should not read anything about the case * * * nor should you listen to anything about it * * *.

"You must not permit anyone to share in your responsibility, which is your responsibility alone, to determine this case solely on the evidence

which you hear in this courtroom." (Emphasis added.)

The next morning defense counsel informed the judge that when the *Welch* venire was being examined on voir dire some five days earlier, some members of the *Miller* jury panel "were part of the over-all panel in the Walter Welch case. Of course, the actual jury members who sat in the Welch case were excluded [from the *Miller* venire]." Counsel stated that he did not know "whether any of these jurors after the Welch case may have discussed with the others what happened." In colloquy with the judge it was developed that up to that minute the name of Welch had not even been mentioned in the *Miller* trial. Describing it as "a nebulous situation," defense counsel asked for a mistrial. No prejudice was shown, and counsel observed simply that "we don't know what jurors talk about when these cases are over."

There was no suggestion that any members of the *Miller* panel of jurors actually had talked with or gained any impression concerning this case from jurors who had sat in the *Welch* trial. The appellant had made no demonstration and no proffer of evidence of partiality on the part of any juror.[10] There was no motion that the judge inquire of the jurors whether any of those drawn in the *Miller* trial had perceived from any source a connection with the *Welch* case or, if so, had formulated any opinion as to Miller's guilt.[11]

The judge in colloquy with defense counsel stated

"that before this trial commenced, you asked me to make sure that no person who served as a juror—

"[Counsel]: Yes—

"The Court:—in the Welch case was on the panel in this case; and I did that. That was accomplished."

The trial judge then denied the motion for a mistrial but gave the defense leave

---

9. See note 4 *supra.*

10. See Reynolds v. United States, 98 U.S. 145, 156, 25 L.Ed. 244 (1878); cf. Holt

v. United States, 218 U.S. 245, 248, 249, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

11. See Reynolds v. United States, *supra* note 10, 98 U.S. at 156.

to renew the motion at the close of the defense case. The trial was resumed.

When the appellant took the stand, he testified that someone else was occupying a room on the second floor but he did not mention Welch. The chest of drawers in which the empty capsules and other paraphernalia had been found belonged to the appellant, he testified, and that was in an unoccupied room. He had never previously seen those capsules, he said. He not only did not know how the heroin got into his coat pocket downstairs, he did not know how the empty capsules got into his chest of drawers upstairs, he said. He made no suggestion that Welch was the "someone else" who occupied a bedroom on the second floor or that he owned any of the seized evidence. Although he had been given an opportunity to renew his motion for a mistrial at the close of the defense case, the appellant made no such motion. It fairly may be deduced that defense counsel was satisfied that the instant trial had in no way been linked with the *Welch* case to the prejudice of the appellant.

■ We conclude that no bias or lack of impartiality was demonstrated with respect to any juror, nor was there established a basis for requiring the trial judge to do other than deny the motion for a mistrial. We are satisfied that the jury could readily conclude that actual possession by the appellant of the narcotics in question had been established beyond a reasonable doubt, thus bringing into play the presumption permitted by the applicable statutes, *supra* notes 1 and 2. After consideration of the entire record, we perceive no error.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting).

In this case the jury was called upon to choose between two widely varying accounts of police entry into the premises where appellant lived and seizure of narcotics found in appellant's suit coat. According to the Government's version, appellant met the police officers at the door, admitted that there were narcotics in the house, and led them to his room where paraphernalia commonly used in administering narcotics were found. The police testified that appellant then led them to another room occupied by one Portia Owens, a narcotics addict. In this room the officers found appellant's suit coat containing a package of heroin powder in one of the pockets. The coat was lying on the bed which at the time was occupied by Miss Owens.

There is no question that the Government's evidence, if credited, was sufficient to sustain a jury finding that appellant had possession of the heroin, but appellant gave a quite different version of the events in issue. He testified that the suit coat was found by the police without his directing them to it and that he had no knowledge of the narcotics which were found in the coat pocket. Obviously if his testimony were to be credited a conviction could not have resulted. Because I feel that this was not made sufficiently clear to the jury by the court's instructions, I would remand this case for a new trial.

The problem involves the meaning of "possession" in 21 U.S.C. § 174 and 26 U.S.C. § 4704. Both sections prohibit certain transactions involving narcotics and both provide that a finding of possession of the contraband drugs raises a presumption that the possessor committed the prohibited acts.[1] This presump-

---

1. 21 U.S.C. § 174 prohibits, *inter alia*, the concealment of narcotics which have been illegally imported and which are known to have been illegally imported. It provides that whenever a defendant is shown to have had possession of a narcotic drug "such possession shall be deemed sufficient evidence to authorize conviction

unless the defendant explains the possession to the satisfaction of the jury."

26 U.S.C. § 4704 prohibits the purchase, sale, or distribution of narcotics except in the original stamped package. It provides that "the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a

tion of guilt, since it contravenes the usual presumption of innocence, must be strictly confined to the limits prescribed in the statutes.[2] Hence, aside from the question whether the evidence would sustain a finding of possession, if in fact the jury were to find no possession no statutory presumption could be invoked and conviction would have to rest on direct evidence of the prohibited acts. It is evident, therefore, that the term "possession" must be correctly defined in the court's instructions so that the jury will be properly informed as to when the statutory presumption can be used.

Here the jury was instructed as follows:

"* * * [Y]ou are instructed as a matter of law that possession as used in the statute means not merely actual physical possession, where the drug is in the immediate possession or control of the Defendant, but also includes constructive possession as well. Constructive possession occurs when a person does not have within his hands or grasp the article in question but does have dominion and control over the article."

At no point in the charge was the jury told that appellant must have known of the presence of the heroin in order to have possession.[3] Possession was equated with "dominion and control." Thus, the jury might well have thought that the dominion and control which appellant had over his coat was sufficient to give him dominion and control, and hence "possession," over the narcotics found inside the coat. Possession, thus conceived, could have been found even if the jury believed appellant's contention that he did not know the heroin was in his coat.

I think it is well settled that, whatever possession may mean in other contexts, under the narcotics laws it means dominion and control with knowledge.[4] Where the evidence is not sufficient to show

---

violation of this subsection by the person in whose possession the same may be found."

The two sections are functionally equivalent, except that under 26 U.S.C. § 4704 the absence of taxpaid stamps, in addition to possession, is necessary to raise a presumption. See Harris v. United States, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); United States v. Landry, 7 Cir., 257 F.2d 425 (1958).

2. Jackson v. United States, 102 U.S.App. D.C. 109, 110, 250 F.2d 772, 773 (1957). And cf. United States v. Maghinang, D. Del., 111 F.Supp. 760, 761 (1953).

3. The Government in this case did not urge the theory that Miss Owens was subject to appellant's control as an agent or employee and that, therefore, any possession of hers would be with appellant's knowledge and subject to his dominion and control. This theory of constructive possession has been upheld in numerous narcotic cases. *E.g.*, United States v. Rosario, 2 Cir., 327 F.2d 561 (1964); United States v. Hernandez, 2 Cir., 290 F.2d 86 (1961).

4. Arellanes v. United States, 9 Cir., 302 F.2d 603, *cert. denied*, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962); Guevara v. United States, 5 Cir., 242 F.2d

745 (1957); United States v. Tijerina, S.D.Tex., 138 F.Supp. 759 (1956).

The model instruction approved in *Arellanes*, 302 F.2d at 608–609, n. 8, is as follows:

"The law recognizes two kinds of possession: actual possession and constructive possession. A person who *knowingly* has direct physical control over a thing, at a given time, is then in actual possession of it.

"A person who, although not in actual possession, *knowingly* has the power at a given time to exercise dominion or control over a thing, is then in constructive possession of it." Form 55, 20 F.R.D. 278 (1958). (Emphasis added.) See Johnson v. United States, 9 Cir., 270 F.2d 721, 724 (1959), *cert. denied*, 362 U.S. 937, 80 S.Ct. 759, 4 L.Ed.2d 751 (1960).

To leave the jury with the impression that the commission of a crime can be inferred from ignorant "dominion and control" over contraband articles may well run afoul of the constitutional requirement of a rational connection between the fact presumed and the fact proven. See United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); Tot v. United States, 319 U. S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

knowledge on the part of the defendant, the charge should be dismissed.[5] Here, although the evidence was sufficient to establish appellant's knowledge, it was never made clear to the jury that his knowledge was required before the statutory presumption could be applied.

I do not read the majority opinion as disputing that knowledge is an essential element of the "possession" referred to in the narcotics laws.[6] The decision appears to rest either on a belief that the trial judge's instructions made this fact clear to the jury or on the ground that defense counsel's objection did not sufficiently raise the point and, therefore, Rule 30, FED.R.CRIM.P., prevents appellant's pressing the point on appeal. I need not consider whether the charge given could constitute plain error under Rule 52(b), FED.R.CRIM.P.,[7] since in my opinion defense counsel's objection was sufficient to preserve the point.

At the end of the charge, defense counsel requested an instruction telling the jury that they should consider the fact that another person, namely Portia Owens, could have placed the heroin in appellant's coat pocket. The point was that the heroin could have gotten into appellant's coat without his knowing it. In response to counsel's request, the trial judge instructed the jury as follows:

"* * * He [appellant] says he didn't have possession. Obviously, if he didn't have possession, he would not be called upon to explain it.

"He says he didn't have possession. So if possession was in someone else, then he wouldn't be required to explain a possession which he didn't have, according to his theory."

This instruction, given in terms of "possession" which had previously been defined as mere dominion and control, would not rectify a possible jury misconception that the statutory presumption might apply even absent a finding of knowledge on the part of appellant.

I respectfully dissent.

---

5. Jackson v. United States, *supra* Note 2; United States v. Tijerina, *supra* Note 4; United States v. Maghinang, *supra* Note 2.

6. Johnson v. United States, *supra* Note 4, is cited with apparent approval in footnote 7 of the court's opinion. That case specifically approved the instruction set

out at 20 F.R.D. 278, which is generally given in the Ninth Circuit. See Arellanes v. United States, *supra* Note 4; Green v. United States, 9 Cir., 282 F.2d 388, 391 (1960), *cert. denied*, 365 U.S. 804, 81 S.Ct. 469, 5 L.Ed.2d 460 (1961).

7. But compare Barfield v. United States, 5 Cir., 229 F.2d 936 (1956).