**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joe M. MENDOZA, Defendant-Appellant.**

**No. 29417**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Oct. 19, 1970.

Rehearing Denied Nov. 6, 1970.

---

17. See 295 F.Supp. 1208, at 1214–1216.

\* Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

current ten-year terms in a federal penal institution. The Government then dismissed the indictment as to Carmen Mendoza.

Mendoza now appeals his conviction to this Court. Finding no reversible error in the trial of the case, we affirm the judgment of the district court.

## I.

First, Mendoza complains of the trial court's refusal to require the Government to disclose the name of the informer. Mendoza alleges that the name of the informer was necessary to his defense because he had reason to believe that the informer was a man who had repeatedly threatened him and who could have planted the heroin in the Stahl house.

The Supreme Court on public policy grounds has recognized the privilege of the Government to withhold from disclosure the identity of the informer. Scher v. United States, 1938, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151. Nevertheless, when the disclosure of an informer's name is "relevant and helpful to the defense of an accused," the Court will require the disclosure. Roviaro v. United States, 1957, 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645; Miller v. United States, 5 Cir. 1960, 273 F.2d 279, 280. The Court established no fixed rule in the Roviaro case. On the contrary,

Clyde W. Woody, Houston, Tex., for defendant-appellant; Joe M. Mendoza, pro se.

Seagal V. Wheatley, U. S. Atty., Reese L. Harrison, Jr., Asst. U. S. Atty., John G. Truelson, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

On May 8, 1969, armed with a search warrant secured on the basis of information supplied by an informer, federal narcotics agents entered the house of Alexander Stahl in San Antonio, Texas, and discovered approximately 10.260 grams of heroin. An indictment charging violations of 21 U.S.C. § 174[1] and 26 U.S.C. § 4704(a)[2] was returned against two of the occupants of the house, Joe M. and Carmen Mendoza. Joe Mendoza was tried separately before the court without a jury, convicted on two counts, and sentenced to serve two con-

---

1. § 174. [Importation of narcotic drugs prohibited]; penalty; evidence

Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. * * *

Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

2. § 4704. Packages

(a) General requirement.—It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.

[t]he problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62, 77 S.Ct. at 628–629. The circumstance alleged to justify disclosure in the *Roviaro* case was the informer's active participation in the crime charged. *See also* Portomene v. United States, 5 Cir. 1955, 221 F.2d 582; United States v. Conforti, 7 Cir. 1952, 200 F.2d 365. This Court has since held that when "all the evidence discloses is that the informer was an informer and nothing more," the Government should not be required to identify the informer. Miller v. United States, 5 Cir. 1960, 273 F.2d 279, 281.

Here the informer was merely an informer. Although he gave information to the narcotics agents that led to Mendoza's arrest, there is no evidence showing that the informer participated in any way in the offense charged. In the trial court Mendoza attempted to show that the informer had repeatedly threatened him and was in a position to have planted the heroin in the Stahl house. In a hearing at the bench, however, the district judge specifically stated that Frederico Musquiz, the man whom Mendoza suspected of having informed the Government, was not the informer.

■ Mendoza contends further that he was entitled to the name of the informer for the purpose of attacking the validity of the search warrant. But the rule is well-established that the Government need not disclose the identity of an informer when the sole purpose to be served is to attack the probable cause supporting a search warrant. Lopez v. United States, 5 Cir. 1956, 370 F.2d 8, 11; United States v. Rugendorf, 7 Cir.

1963, 316 F.2d 589, 592–593, *aff'd*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887.

Applying the *Roviaro* test, we conclude that in these circumstances there was no error in the trial court's refusal to compel the Government to identify its informer.

## II.

Second, Mendoza argues that the affidavit for the search warrant under which the narcotics agents entered the Stahl house and found the heroin fails to meet the test of Spinnelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, and Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

■ Under the two-pronged test of *Spinnelli* and *Aguilar*, to establish probable cause the affidavit must provide the magistrate with some of the underlying circumstances from which the informer concluded that the accused was committing a crime and some of the underlying circumstances from which the affiant concluded that the informer was credible. We hold that the affidavit in this case satisfies both the above requirements.

■ The affidavit recites that the informer said he had seen heroin in Mendoza's possession on May 5, 6, and 7, at the Stahl house and further that Mendoza displayed the heroin to him and told him it was for sale. All that is required by *Spinnelli* and *Aguilar* is a sufficient statement of how the informer gathered his information. The affidavit in this case clearly demonstrates that the informer obtained his information through personal observations and conversations with Mendoza.

The affidavit also recites that "[t]he informant who apprised me of the above information has given information to me on several occasions in the past which has proven to be true and reliable." This Court has held that such a factual statement of past reliability provides sufficient basis for the magistrate to gauge independently the reliability of the informer. United States v. Vigo, 5 Cir.

1969, 413 F.2d 691, 692; United States v. Rich, 5 Cir. 1969, 407 F.2d 934, 937. Moreover, other recitations in the affidavit lend authenticity to the informer's report. The affiant states that the files of the Bureau of Narcotics & Dangerous Drugs list Mendoza as a suspected drug user and seller; that listing is undoubtedly based upon the uncontradicted fact that Mendoza had previously been convicted for narcotics violations. The informer reported that many of Mendoza's customers were Latin Americans who reside on the west side of San Antonio. While maintaining surveillance, the affiant saw several persons matching that description, including one known narcotics user, visit the Stahl house, stay a few minutes, and then leave.

In these circumstances we hold that the information supplied by the informant, based on his personal observations and substantiated by instances of past reliability and additional supporting information gathered from surveillance, satisfied the *Spinnelli* and *Aguilar* test for probable cause. *See* United States v. Vigo, 5 Cir. 1969, 413 F.2d 691, 692–693.

### III.

Third, Mendoza contends that the manner in which the narcotics agents executed the search warrant violated the federal standards set out in 18 U.S.C. § 3109.[3] We find no merit in that contention.

The narcotics agents executed the search warrant in the following manner. On the afternoon of May 8, 1969, four agents drove up to the front of the Stahl house on Ranmar Street; Stahl was Mendoza's father-in-law. They jumped out of their cars and ran toward the house. Agent Vollmer immediately saw a man standing in the driveway at the rear of the house and shouted to him that

he was a federal agent with a search warrant. He then approached the man, who happened to be Stahl, the owner of the house, and once again identified himself and announced his purpose. Together with another agent, the two men went to the back door and entered the house. Meanwhile, agent Billings, who actually carried the search warrant, had arrived at the front door of the Stahl house. He knocked three or four times and then heard a voice say "Federal agents with a search warrant." Recognizing the voice as agent Vollmer's and thinking that the search warrant had been executed, he opened the unlatched screen door and entered the Stahl house. He proceeded to the rear of the house and found Mendoza sitting at the kitchen table. Shortly thereafter, agent Vollmer and Stahl entered the kitchen through the back door.

An alleged violation of 18 U.S.C. § 3109 must be judged in light of the particular circumstances surrounding the execution of the warrant. Jones v. United States, 1960, 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697. The purpose of the statute is to protect the householder from unlawful invasion of his house. To that end, Government agents are required to announce their authority and lawful purpose before entering the house. Miller v. United States, 1958, 357 U.S. 301, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332, 1340–1341. This is not a case such as Sabbath v. United States, 1968, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828, in which there was no announcement of the agents' authority and purpose. On the contrary, before peaceably entering the Stahl house and beginning their search, the agents here had twice identified themselves and announced their purpose to the owner of the house. Moreover, the announcement was made loudly enough so that it is fair to infer that anyone inside the house

---

3. § 3109. *Breaking doors or windows for entry or exit*

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

also heard the agent's words. In these circumstances, we conclude that the manner in which the narcotics agents executed the search warrant did not violate any rights secured by 18 U.S.C. § 3109. *See* Cognetta v. United States, 9 Cir. 1963, 313 F.2d 870; United States v. Viale, 2 Cir. 1963, 312 F.2d 595.

## IV.

Finally, Mendoza contends that the Government has failed to prove beyond a reasonable doubt the essential elements of the crimes charged. Specifically he alleges that the Government has not proved the facts necessary to invoke the statutory presumptions of 21 U.S.C. § 174 and 26 U.S.C. § 4704(a).

 Section 174 provides that "[w]henever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." Mendoza argues that the Government has shown merely that he was present where heroin was found but not that he had possession of the drug. Possession within the meaning of the statute may be either actual or constructive. Possession need not be exclusive, but may be shared with others, and is susceptible of proof by circumstantial as well as direct evidence. Garza v. United States, 5 Cir. 1967, 385 F.2d 899, 901; Smith v. United States, 5 Cir. 1967, 385 F.2d 34, 38–39. The Government acknowledges that in this case it relies on circumstantial proof of constructive possession—that is, dominion and control over the heroin.

 The narcotics agents testified that when they entered the Stahl house and found Mendoza, his eyes were glassy and he seemed passive. Finding red needle marks in the crook of his arm, they concluded that he was under the influence of narcotics. They observed that no one else living in the house appeared to be under the influence of narcotics. Indeed, Stahl testified that neither he, his wife, nor his children used heroin and that they had never before had any heroin in their house. The agents found the heroin concealed in a cigarette package hidden in a dog box. Stahl testified that the dog and the dog box belonged to the Mendozas. He also said that the dog was vicious toward anyone coming near it, but that Mendoza could safely approach it. Upon the discovery of the heroin in the dog's box, Mendoza said nothing. We hold that the above testimony constituted a sufficient evidentiary basis for a finding of constructive possession.

 Mendoza's other arguments in connection with 21 U.S.C. § 174 are without merit. It seems clear that a judge sitting without a jury is entitled to use the statutory presumption. *See* United States v. Santore, 2 Cir. 1960, 290 F.2d 51; United States v. Bailey, 7 Cir. 1960, 277 F.2d 560. The constitutionality of the statutory presumption with respect to heroin is no longer open to question. *See* Turner v. United States, 1970, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610. Moreover, the Government has not attempted to prove Mendoza's guilt by his "mere presence" where heroin was found. It has offered substantial evidence to prove Mendoza's dominion and control over the heroin.

 Mendoza also attacks the sufficiency of the Government's evidence attempting to prove a violation of 26 U.S.C. § 4704(a). We must sustain that objection. The Government admits that it failed to prove that the heroin container did not have the required tax stamps on it. Without that proof, the Government is not entitled to rely on the statutory presumption. Harris v. United States, 1959, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597. Nevertheless, the failure of proof as to the presence of the tax stamps is nonreversible error. The district court sentenced Mendoza to serve two concurrent ten-year terms for his violations of 21 U.S.C. § 174 and 26 U.S.C. § 4704(a). Because we have found a

valid conviction on the § 174 count that supports the ten-year sentence, any error in the trial of the § 4704(a) count is nonprejudicial. Muir v. United States, 5 Cir. 1967, 373 F.2d 712, 713; Mishan v. United States, 5 Cir. 1965, 345 F.2d 790, 791. *See* Benton v. Maryland, 1969, 395 U.S. 784, 86 S.Ct. 2056, 23 L.Ed.2d 707.

The judgment is affirmed.