**UNITED STATES of America,**
**Appellee,**

v.

**Michael Vincent CATALANO and Martin**
**Goldman, Appellants.**

**Nos. 491, 492, Dockets 35463, 35513.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 29, 1971.

Decided March 17, 1971.

---

Milton J. Carp, Sp. Attorney, Department of Justice, Whitney North Seymour, Jr., U. S. Atty., for appellee.

Joseph Panzer, New York City, on submission for appellant Catalano.

Joseph P. Hoey, Amen, Weisman & Butler, New York City, for appellant Goldman.

Before WATERMAN, MOORE and FEINBERG, Circuit Judges.

PER CURIAM:

The background of this case presents a most bizarre tale of international commercial intrigue. However, for the purposes of our decision, it is not necessary to narrate the full script, which is suitable for the cinema or for television. We therefore confine ourselves to the essential details of the case.

The evidence, viewed in the light most favorable to the Government, shows that the appellant Goldman entered into a joint venture with one Williams and one Flax to obtain a large quantity of platinum below the market price and to sell it for a large profit. To finance the venture Goldman obtained a loan of $100,000 through a corporation of which he was vice-president, and each of the venturers agreed to be liable for $33,000. After a series of frustrating negotiations, a purchase was arranged, and Williams was sent to San Diego to take delivery. Goldman subsequently arrived in California with Catalano. As the seller insisted on a cash transaction, Catalano was to be Williams's bodyguard. Williams made the final contact with the purported seller, but was tricked out of the $100,000 in cash when that individual suddenly vanished with the money.

Before leaving San Diego, Catalano told Williams that Williams would still be liable to Goldman for $33,000 of the stolen funds, for Goldman was responsible for the $100,000 loan. After the parties returned to New York, Goldman allegedly arranged by phone for Williams to go from New Jersey to New York to discuss the loss of the money. At the alleged meeting Catalano, in Goldman's presence, assaulted Williams and delivered him a deadline within which the $33,000 would have to be paid. Later Goldman, by phone from New York, arranged another meeting with Williams in New Jersey at which Catalano in Goldman's presence again allegedly threatened Williams.

Appellants were tried on a four-count indictment, of which count 3 was dismissed at trial. Count 1 charged that, with reference to the first meeting in New York City, the appellants caused the illegal travel of Williams with intent to extort money from him in violation of 18 U.S.C. §§ 1952 and 2. Count 2 charged interstate travel with intent to extort with regard to the meeting in New Jersey. Count 4 alleged a conspiracy to commit the substantive acts in counts 1 and 2 and alleged as overt acts the San Diego meeting, Goldman's two phone calls, and the two meetings alleged in counts 1 and 2. After a jury trial, both appellants were found to be not guilty on counts 1 and 2, and to be guilty on count 4.

■ Appellants contend that, because of their acquittals on counts 1 and 2, there was insufficient evidence to support their convictions on count 4. Essentially this argument relies on the apparent inconsistency in the jury verdicts. However, under United States v. Carbone, 378 F.2d 420 (2 Cir.), cert. denied, 389 U.S. 914, 88 S.Ct. 242, 19 L. Ed.2d 262 (1967), reversal is not necessarily required by inconsistent jury verdicts. Furthermore, we do not find any necessary inconsistency in these jury verdicts. Only one overt act was necessary to support the conspiracy conviction, and, without passing on whether the San Diego meeting was actually connected with the alleged conspiracy, it is evident that the jury could have reasonable doubts on some of the overt acts connected with the substantive counts and still have been convinced as to at least one overt act alleged in the conspiracy count.

■ Appellants' second contention is that the indictment should have been dismissed because it was founded on the hearsay reading of Williams's former testimony before another grand jury and because the Government's explanation of why Williams failed to testify in person before the indicting grand jury did not adequately justify the use of a transcript in lieu of a personal appearance. However, appellants have not surmounted United States v. Leibowitz, 420 F.2d 39 (2 Cir. 1969), which acts as a limitation on the cases so carefully expounded in appellants' briefs. Here the grand jury knew that it was getting hearsay testimony and appellants have not shown "that there is a high probability that with eye-witness rather than hearsay testimony the grand jury would not have indicted." *Id.* at 42 See also United States v. Rosenstein, 434 F.2d 640, 641 (2 Cir. 1970).

■ Appellant Goldman also asserts that the indictment was duplicitous in that in essence counts 1 and 2 charge subconspiracies already covered in count 4. While we agree that the proof of intent under 18 U.S.C. § 1952, see United States v. Botticello, 422 F.2d 832 (2 Cir. 1970), might require proof of a conspiracy on counts 1 and 2 in this case, we cannot say that counts 1 and 2 are conspiracy counts. Counts 1 and 2 charge substantive offenses which extend beyond an agreement between the appellants. Thus, even though the evidence may overlap on the substantive and conspiracy counts, the counts allege separate violations. See Harris v. United States, 359 U.S. 19, 23–24, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959).

Affirmed.