**UNITED STATES of America**

v.

**Vincent B. WALKER, Appellant.**

**No. 24002.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 4, 1970.

Decided Sept. 20, 1971.

---

Mr. Herbert E. Forrest, Washington, D. C. (appointed by this Court) for appellant.

Mr. Charles H. Roistacher, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and David C. Woll, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and MacKINNON, Circuit Judges.

BAZELON, Chief Judge:

The only issue warranting discussion in this case concerns the trial judge's refusal to permit defense counsel to cross-examine a government witness on the daily dosage of a heroin addict.[1]

Appellant was convicted of two counts of federal narcotic violations based on his possession of 36 capsules of heroin. Count one was based on 26 U.S.C. § 4704 (a), which requires the government to prove that appellant knowingly purchased, dispensed or distributed heroin not in or from the original tax-stamped package. This statute permits, but does not require, the jury to infer guilt from

[1]. Appellant also claims that there was no probable cause for his arrest. He argues, essentially, that the trial judge erred in crediting the arresting officer's testimony because of certain inconsistencies therein. Our review of the transcripts, however, convinces us that the judge's findings of fact were not clearly erroneous.

evidence of possession.[2] Count two was based on 21 U.S.C. § 174, which requires the government to prove that appellant received or concealed illegally imported heroin which he knew had been brought into this country contrary to law.[3] This statute permits, but does not require, the jury to infer knowledge of illegal importation from evidence of possession.

██ The government's case depended upon these statutory inferences.[4] Appellant says he might have persuaded the jury not to draw the inferences if he had been permitted to show that the 36 capsules of heroin with which he was found would be little more than a one day supply for an addict.[5] He never did get to bring this fact to the jury's attention, however, for his cross-examination of a government witness was cut short:

> Defense Counsel: Officer Johnson, how long have you been in the Narcotics Squad?
>
> Witness: I was in the Narcotics Squad for two and a half years.
>
> Defense Counsel: And you have become fairly familiar with the habits of narcotics addicts?
>
> Witness: Yes, sir.

> Defense Counsel: Based on your own experience, how long do you think it would take an addict to use the 36 capsules of heroin?
>
> Prosecutor: I would object.
>
> Court: The objection is sustained.

The prosecutor did not state the grounds of his objection;[6] the judge did not ask defense counsel to respond to the objection, nor did he give his reason for sustaining the objection; and defense counsel did not make a proffer of the information he expected to elicit, nor did he explain why the testimony was needed.

██ The government's only argument in this court is that its objection was properly sustained because the testimony sought was irrelevant. It relies wholly on the Supreme Court's approval of the statutory inferences in Turner v. United States.[7] That case, however, simply upheld the statutory inferences against due process attack. Under *Turner* the jury is permitted, but is by no means required, to draw an inference of guilt from evidence of possession. It is still the rule that "[t]he jury must be left free to believe * * * any evidence" which tends to show that the defendant is not guilty of the crime charged despite his possession of narcotics.[8]

2. Turner v. United States, 396 U.S. 398, 419–422, 90 S.Ct. 642, 655, 24 L.Ed.2d 610 (1970) upheld the inference of purchase from evidence of possession, but struck down the inference of dispensing or distributing, "for the bare fact of possessing heroin is far short of sufficient evidence from which to infer * * * these acts."

3. *See id.* at 405–407, 90 S.Ct. 642; Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 843 (1959).

4. The evidence introduced by the government showed only that a police officer saw appellant shake some capsules out of a small manilla envelope and display them to a companion. At that moment the companion spotted the officer and fled. Appellant was then arrested and searched, and the contraband uncovered.

5. *Compare* Watson v. United States, 141 U.S.App.D.C. ——, 439 F.2d 442 (1970) (*en banc*) (13 capsules of heroin was one-half Watson's daily habit).

6. *Cf.* F.R.Cr.P. 51, which abolishes formal exceptions and states that in place of an exception "it is sufficient that" the objecting party "makes known to the court the action which he desires the court to take or his objection to the action of the court and *the grounds therefor* * * *.*" (Emphasis added.) This rule assures that the trial judge makes an informed decision, and allows the judge and opposing counsel to take whatever corrective action is needed. *See* 8A Moore, Federal Practice ¶ 51.02 (1970). Both of these purposes would have been well served here had the prosecutor stated the grounds of his objection.

7. *Supra* note 2.

8. United States v. Peeples, 377 F.2d 205, 210 (2d Cir. 1967) (dealing with the inference of knowledge of illegal importa-

■ The excluded testimony was plainly relevant here, for the fact that 36 capsules of heroin may be only a personal supply tends to cast doubt on appellant's guilt. With respect to the first count (26 U.S.C. § 4704(a)) the evidence might have raised a reasonable doubt whether appellant had purchased the drug, rather than having found, stolen or been given so small an amount. But even more important, the excluded testimony clearly raises the question whether appellant would be likely to dispense or distribute his limited supply of heroin.[9] And since we do not know whether the jury found that appellant purchased, or that he dispensed, or that he distributed the narcotic, we cannot say that the exclusion had no impact.[10] With respect to the second count (21 U.S.C. § 174) the fact that appellant possessed an amount of heroin likely to be intended only for his own use casts doubt upon the inference that he was sufficiently involved in the heroin trade to know whether the drugs had been illegally imported.[11]

■■ The dissent suggests that the trial judge might have sustained the prosecutor's general objection because the question touched on matters beyond the limits of the direct examination. We reject this sort of speculation. To be sure, when an objection is sustained for the wrong reason, or for no discernible reason, an appellate court may affirm if it clearly appears that the evidence is inadmissible under any circumstances.[12] In such event the ruling below is harmless error. But it is not harmless where, as here, the party offering the evidence could have taken corrective action (*e. g.*, calling the witness as his own) if he had known the ground which the dissent now imputes to the objection.[13] Moreover, there is no basis in this record for determining how the trial judge would have exercised his broad discretion to decide whether the cross-examination exceeded the scope of the direct if he had been called upon to do so.[14]

tion from evidence of possession in 21 U.S.C. § 174); *cf.* United States v. Glaziou, 402 F.2d 8, 16 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969).

The admission of such evidence is particularly important where, as here, the defendant exercises his privilege not to testify, for he otherwise cannot rebut the inferences which flow from evidence of possession of narcotics.

9. This is so whether the jury found that appellant dispensed or distributed heroin by relying on the statutory inference (since declared invalid in Turner v. United States, *supra* note 2 at 421, 90 S.Ct. 642) or by believing that appellant "was in the process of" dispensing or distributing (*see id.* at 420, 90 S.Ct. 642) when arrested, *see* note 4, *supra*. Speaking of cocaine in *Turner*, the Supreme Court noted that "having a small quantity * * * is itself consistent with [appellant's] possessing the [drug] not for sale but exclusively for his personal use." *Id.* at 423, 90 S.Ct. at 656.

10. *See, e. g.*, Street v. New York, 394 U.S. 576, 585–588, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969) and cases cited; United States v. Romano, 382 U.S. 136, 138, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

11. *Compare* Turner v. United States, *supra* note 2 at 406 & n. 6, 416–417, 90 S.Ct. 642.

The jury obviously had some difficulty with the question of appellant's knowledge of illegal importation, for after perhaps an hour of deliberation it sent the following note to the judge (emphasis in the original):

In regard to the *"Second Count"* on the indictment, please clarify the following terms for our clear understanding:
1) concealment
2) imported into the United States contrary to law, WITH THE KNOWLEDGE

12. *See, e. g.*, McMahon v. Matthews, 48 App.D.C. 303 (1919); Wigmore, Evidence § 18 at 338 (3d ed. 1940) and cases cited; McCormick, Evidence 118 (1954) and cases cited.

13. McMahon v. Matthews, *supra* note 12 at 308.

14. *See, e. g.*, Baker v. United States, 131 U.S.App.D.C. 7, 36, 401 F.2d 958, 987 (1968).

An essential element entering into the judge's exercise of discretion is that the central purpose of limiting cross-examination—assuring that evidence is presented in a way which does not confuse the

■ The search for truth in this trial might not have aborted if the participants had known what was on each others' minds. The prosecutor should have stated the basis of his objection. And, although confronting a judge after he has ruled may be risky business, defense counsel should have proffered the testimony he expected to elicit. But the basic responsibility for making a proper evidentiary ruling must lie with the trial judge. Therefore—except where the reason for the objection is obvious to all [15]—the judge should refrain from an immediate ruling, and should inquire into the ground of the objection and the basis of the question asked. The judge should then state the reason for his ruling.[16] Aside from facilitating appellate review, this procedure ensures both that the judge makes an informed decision and that the party opposing the objection has an opportunity to take appropriate corrective action.

For the reasons stated,[17] we reverse the convictions on counts one and two so that a new trial can be held.[18]

It is so ordered.

MacKINNON, Circuit Judge (dissenting):

I would affirm the convictions on counts 1 and 2 which involved heroin but because of Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), which was decided after this case was tried, I concur in the reversal of the conviction on count 3 which involved cocaine.

The majority opinion reverses the conviction on counts 1 and 2 on the fanciful premise that if appellant had been permitted to show that the 36 capsules of heroin found in his possession when he was arrested would be *little more than a day's supply for an addict,*[1] he might have persuaded the jury not to draw the statutory inferences.[2] The underlying

---

jury, *see* Wigmore, Evidence §§ 1887–88 (3d ed. 1940)—would not have been thwarted by admission of the evidence in question, for the short trial (2 hours and 17 minutes, including voir dire) did not present any complicated factual issues. We note that it is this element which the draftsmen of the Proposed Federal Rules of Evidence have made determinative of the scope of cross-examination. Rule 611 states:

(b) *Scope of Cross-Examination.* A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interests of justice, the judge may limit cross-examination with respect to matters not testified to on direct.

The Advisory Committee's Note then explains:

The provision of the second sentence, that the judge may in the interests of justice limit inquiry into new matters on cross-examination, is designed for those situations in which the result otherwise would be confusion, complication, or protraction of the case, not as a matter of rule but as demonstrable in the actual development of the particular case.

15. *See, e. g.,* New England Newspaper Pub. Co. v. Bonner, 68 F.2d 880 (1st Cir.), cert. denied 292 U.S. 625, 54 S.Ct. 630, 78

L.Ed. 1480 (1934); Mills v. Texas Compensation Ins. Co., 220 F.2d 942, 946 (5th Cir. 1955).

16. *Cf.* Davis v. Clark, 131 U.S.App.D.C. 379, 404 F.2d 1356, 1358 (1968) (statement of Tamm, J.) (The requirement in F.R.A.P. 24 that a trial judge state his reasons for denying leave to appeal in forma pauperis "is not onerous if the matter was dealt with in a conscientious manner in passing on the merits.")

17. Contrary to the "fanciful" fears of the dissent that this case "open[s] the door for the open flaunting of the narcotic laws," we believe that our decision simply assures that appellant's guilt or innocence will be determined by a jury which has all the relevant information before it.

18. In addition, as the government concedes, Turner v. United States, *supra* note 2 at 424, 90 S.Ct. 642, requires that we vacate the conviction on the third count of the indictment, which charged a violation of 26 U.S.C. § 4704(a) based on possession of cocaine.

1. The basic theory of this argument is deficient in that it fails to deal with the percentage of narcotic drug in the capsules.

2. 26 U.S.C. § 4704(a) provides:
It shall be unlawful for any person to purchase, sell, dispense, or distribute

premise for this contention is the claim that if a person when arrested has little more than a day's supply of heroin in his possession it supports the inference that such narcotics were "only a *personal supply*." There are at least two deficiencies in this line of reasoning. *First*, there is no logical relationship between the quantity of narcotics in one's possession and the use or disposition intended by the possessor. *Secondly*, there is no evidence here that the accused used heroin or any other narcotic drug.[3] This point alone is dispositive of the entire theory advanced by the majority and compels affirmance.

The majority opinion also proceeds by seizing upon a single ruling by the trial court sustaining an objection to a single question directed to a plainclothesman of the Homicide Squad (with some prior experience in the Narcotics Squad) on cross-examination by appellant's counsel. The question was:

"Based on your own experience, how long do you think it would take an

addict to use the 36 capsules of *heroin?*" (Emphasis added).[4]

In my opinion the ruling by the trial court sustaining the objection to this question was clearly correct since it sought to elicit incompetent and irrelevant testimony.[5] My first basis for this conclusion is that the underlying theory of the question was fallacious for the two reasons cited above. The court's ruling sustaining the objection to the question was thus clearly proper because appellant had not laid any foundation to indicate that he used heroin. The question was also objectionable because it ignored the fact that the accused also had 16 capsules of cocaine (another narcotic drug) in his possession at the same time.

The trial court's ruling is also valid because the question constituted improper cross examination. Prior to cross examination the witness had only testified to receiving the narcotics from the arresting officer, as to the nature of the container and as to the results of a field test he gave some of the 52 capsules

narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.

21 U.S.C. § 174 provides:

\* \* \* \* \*

Whenever on trial for a violation of this section [possession of a narcotic drug knowing the same to have been imported or brought into the United States contrary to law] the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

3. The majority opinion wholly fails to deal with this point.

4. *See* note 1, *supra*.

5. In my view this question was *clearly* objectionable because no proper foundation was laid and it exceeded the bounds of direct examination and the reasons were obvious to all. This is the conclusion that courts generally reach in such situations and there is no reason here to reach a reverse conclusion. Wigmore

well states the rule applied to such situations as follows:

[W]hen a general objection is *sustained* by the trial court, it may be presumed that some valid ground was apparent to the judge without express statement; and as the exception is here to be taken by the proponent of the evidence, it is fair to insist that he should have asked for the specific ground of objection, if he did not perceive it; or should have made an offer to obviate it, if he did perceive it; or should have stated clearly the precise basis of his claim for admissibility, if he had rested on any specific ground. *Hence, the general objection will suffice, on appeal by the proponent of the evidence, if on the face of the evidence and the rest of the case there appears to be any ground of objection which might have been valid (or, otherwise stated, if there is any purpose for which the evidence would conceivably be inadmissible)* \* \* \* [Citing cases].

J. Wigmore, Evidence § 18 (3d ed. 1940). I do not place this case in the category of a correct rejection for a wrong reason, but rather of a correct rejection for correct reasons obvious to all. Thus the dicta in McMahon v. Matthews, 48 App. D.C. 303 (1919), referred to by the majority opinion, are not controlling.

(Tr. 36–43). The question was thus objectionable as being improper cross examination because it exceeded the facts and circumstances brought out or connected with matters stated by the witness on direct examination. 58 Am.Jur. Witnesses § 629 p. 349 and cases cited. This is the Federal Rule, Wigmore, Evidence §§ 1885–1889 (3d ed. 1940), and the rule in this circuit, Baker v. United States, 131 U.S.App.D.C. 7, 36, 401 F.2d 958, 987 (1968), which two judges of a panel have no authority to overrule.

The majority opinion also indicates that the trial judge should have stated the reason for his ruling on the objection. However, if we use the standard stated in the majority opinion, the reason for the ruling was "obvious to all" and that should dispose of the matter.

There is also no logical relevance in the further claim advanced in the majority opinion that the quantity of narcotics in appellant's possession is somehow probative with respect to whether he "purchased the drug rather than, for example, finding or stealing so small an amount." That one possessed a small quantity of narcotics when arrested on a street does not logically tend to prove or disprove that he purchased, found or stole the narcotics.

The majority next contends that the relationship of the quantity of narcotics in one's possession to an addict's [6] needs would be probative on the question as to whether he had knowledge of importation. While it is true that from large quantities of narcotics in one's possession an inference might be permissible that he was a large dealer and hence would have knowledge of the importation, the contrary is not necessarily true that a smaller amount would be materially relevant to show that he did not have knowledge of importation. To the extent that this argument has any weight whatso-

ever its force is of such minuscule proportions that excluding it was nothing more than harmless error at the most.

So, because a defense lawyer asked an obviously improper question, a convicted felon, who appears from the evidence to have been caught red-handed on the public street blatantly pushing a choice of narcotics (heroin and cocaine),[7] goes free for another trial wherein the interests of society will be hazarded more than usual by Government evidence that has grown stale with the passage of time. To term the process which leads to this result as a "search for truth" is a misnomer of a search for unsubstantial error. From the reversal of the conviction I dissent.

---

6. There is no showing that Walker was an addict.

7. The majority opinion completely ignores the clear implications that Walker was a pusher which is inferable from the fact

that he had *two* narcotics in his possession on the street and was shaking out capsules from an envelope for another person when he was interrupted by the police officer and arrested.